UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

NOLDE ROBINS, JR., ANN MARIE
ROBINS, and NOLDE ROBBINS, JR.,
and ANN MARIE ROBINS T/D/B/A
NOLDE'S AUTO SALES AND
EAST END LIQUIDATION

Plaintiffs,

v.

Civil Action No. 3:12-CV-02034

(Judge Kosik)

NATIONWIDE MUTUAL
INSURANCE COMPANY
s/b/m HARLEYSVILLE MUTUAL
INSURANCE COMPANY

Defendant.

FILED
SCRANTON

NOV 2 6 2013

PER_____
DEPUTY CLERK

**MEMORANDUM**

Before this court are Defendant's Motion for Summary Judgment and Motion to Strike Expert Opinions and/or Testimony of Jay William Seeherman. For the reasons which follow, the Court will deny Defendant's Motion for Summary Judgment and Motion to Strike.

**I. INTRODUCTION**

Plaintiff filed a Complaint (Doc. 1) on October 10, 2012. The Court granted the parties' joint motion for extension of time to complete discovery and set July 31, 2013, as the new discovery deadline. (Docs. 17, 18.) On May 9, 2013, the Court approved Defendant's stipulation to substitute Nationwide Mutual Insurance Company ("Nationwide") as the sole defendant.[1]

---

[1]Nationwide owns Harleysville Mutual Insurance Company. (Docs. 19, 20.)

1

(Docs. 19, 20.) Defendant filed a motion for summary judgment, a statement of material facts, and a request for an oral argument hearing on the motion on August 20, 2013 (Doc. 24), and a brief in support on September 3, 2013 (Doc. 29). Plaintiffs responded to Defendant's motion for summary judgment by filing a counterstatement of material facts (Doc. 26), an answer (Doc. 27), a statement of material facts in opposition (Doc. 30), and a brief in opposition (Doc. 31).

Defendant also filed a Motion to Strike Expert Opinions and/or Testimony of Jay William Seeherman and a brief in support on August 30, 2013. (Doc. 25.) On September 13, 2013, Plaintiff filed a reply (Doc. 32) and brief in opposition (Doc. 33) to Defendant's motion to strike. Defendant then filed a reply brief on September 27, 2013. (Doc. 36.) The parties fully briefed both motions, and they are ripe for disposition.

## II. BACKGROUND

Plaintiffs, Nolde Robins Jr., Ann Marie Robins, and Nolde's Auto Sales, are named insureds under a Standard Flood Insurance Policy ("SFIP")[2], issued by Defendant, Nationwide, a Write-Your-Own ("WYO") Program carrier participating in the National Flood Insurance Program ("NFIP") pursuant to the amended National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.* (Doc. 24, Def.'s SMF, Ex. B, SFIP.) Plaintiffs own the insured, commercial property, located at 1088 West Main Street, Plymouth, Pennsylvania 18651 ("Property"). (Doc. 26, Pl.'s CSMF, ¶ 2.) Part of Plaintiffs' business is a liquidation business that purchases items from businesses liquidating their assets. (Id. at ¶ 10.) On September 8, 2011, flooding damaged the Property and certain contents and inventory. (Id.) Plaintiffs then contacted Defendant and made a claim under the SFIP for the damage sustained. (Doc. 24, Def.'s SMF, ¶ 4.) Plaintiffs

---

[2] Policy No. 87023824682012. (Doc. 24, Ex. B.)

2

had $50,000 in contents coverage and $50,000 in building coverage. (Id., Ex. A, Flood Policy Decls.) National Flood Services ("NFS") retained Simsol Insurance Services ("Simsol") to adjust Plaintiffs' contents claim. (Id.) On September 12, 2011, Defendant notified Plaintiffs by letter that Simsol would assist with the claim process and recommended that Plaintiffs "take photographs of the damages and begin any repairs and/or mitigation efforts." (Id., Ex. C, Letter.) The letter also stated that Plaintiffs should start a contents inventory list that includes the age and approximate replacement cost of each item, and reminded them not to discard any items since the adjuster must inspect all damaged items. (Id.)

Simsol retained an independent contractor, Roosevelt Jackson ("Jackson"), to adjust Plaintiffs' claim. (Id. at ¶ 6.) On September 19, 2011, Jackson met with Plaintiff Nolde Robins, Jr. and provided Mr. Robins a Federal Emergency Management Agency ("FEMA") Flood Insurance Claims Handbook ("Handbook"), which they discussed. (Id. at ¶ 7, Ex. E, Handbook.) Jackson also gave Mr. Robins a FEMA Contents-Personal Property Worksheet ("Worksheet") to aid Mr. Robins with accurately reporting the damaged contents. (Id., ¶ 7.) Jackson inspected the property and took pictures of the ground floor of the building and of insured contents located in a debris pile along the curb. (Id., Ex. D, Jackson Dep. at 16:4-6; 20:4-17; 27:14-17.)

On December 19, 2011, Plaintiffs faxed the completed Worksheet to Jackson. (Id. at ¶ 8, Ex. F, Worksheet.) It contained descriptions, quantities, ages, and replacement costs of the damaged items. (Id.) Mr. Robins used an internet website to determine the value of the glass listed on the Worksheet. (Id. at ¶ 9, Ex. F.) Jackson did not independently evaluate the value or the items (Id. at ¶ 10) or see any documentation, receipts, or invoices to substantiate the items on the Worksheet (Id. at ¶ 9). Mr. Robins informed Jackson that there were no invoices or receipts

3

for the items because they were in a file cabinet that floated away during the flood. (Id. at ¶ 10.)

Among the items listed on the Worksheet were new, polished, and beveled mirrors and furniture glass. (Id.) Mr. Robins received the mirrors and glass from a business going out of business. (Doc. 26, Pl.'s CSMF, at ¶ 10.) The parties dispute whether Mr. Robins told Jackson he purchased the glass and mirrors from someone going out of business (Doc. 24, Def.'s SMF, at ¶ 10), or whether Mr. Robins generally described his liquidation business (Doc. 26 at ¶ 10). Regardless, Mr. Robins asserts that the purchase price of the glass was the costs associated with removing the glass, including labor and shipping. (Id.)

On January 12, 2012, Jackson prepared a Proof of Loss (Doc. 24 at ¶ 11, Ex. I) on Plaintiffs' behalf, utilizing the information contained in the Worksheet (Id., Ex. D, Jackson Dep. at 44:2-13; 45:16-18; 46:3-9). The amount of loss claimed was $58,781.76. (Id., Ex. I.) Jackson submitted the Proof of Loss to Simsol, recommending that Plaintiffs be paid the stated amount. (Id., Ex. D at 32:4-6; 45:16-23.) Jackson also submitted a Flood Damage Closing Report (Id., Ex. H) that contained a Contents Inventory (Doc. 30, Ex. C), on January 12, 2012. After submission, someone, other than Jackson, made various handwritten modifications to the Contents Inventory. (Id., Ex. A, Jackson's Dep. at 24:19-22; 26:8-25; 27:8-22; 28:1-2, 15-22.) The modifications included a line through thirty-six of the thirty-seven items listed, reductions in the value of inventory item totals, gross contents loss, and inventory final totals, and the following handwritten notes on the final page: (1) "[c]ontents were not available for inspection;" (2) "[i]nsured stated they floated away w/receipts for stock purchases / Then changed to 'stolen;'" (3) "[adjuster] states all [c]ontents were located in enclosed office[,] although not available for inspection;" and (4) "'[c]ontents claim is not documented." (Id., Ex. C at 5.)

4

Simsol provided Jackson's recommendation to NFS. (Id. at ¶ 12.) On February 7, 2012, NFS claims examiner, Marie Nelson, requested more information about the contents claim, asking about items that floated away, what items were available for inspection, whether the adjuster identified items in the debris pile, and what items were in the "office." (Id. at ¶ 12, Ex. K, Feb. 7, 2012 E-mail.) On March 8, 2012, Marie Nelson sent Plaintiffs a denial letter for the contents claim. (Id., Ex. L.) The letter stated that the contents claim was closed because documentation of the damage was not submitted after numerous requests, and the photographic documentation of three flood damaged chairs was below the policy deductible. (Id.) Plaintiffs argue that they did provide sufficient documentation since they submitted hundreds of photographs of the damaged contents. (Doc. 26, Pl.'s CSMF, at ¶ 13.)

Plaintiffs objected to the denial of coverage and emailed Marie Nelson 411 photographs on March 12, 2012 (Doc. 30, Pl.'s SMF, at ¶¶ 10-11; Ex. D, March 12, 2012 E-mail). A supplemental claim was opened (Doc. 24 at ¶ 13; Doc. 30, Pl.'s SMF, at ¶ 11), and Simsol assigned it to Jackson, instructing him to determine if the photographs were of items not included in the initial estimate. (Doc. 30, Ex. E, Supplemental Closing Report.) Jackson determined that they were the same photographs previously submitted and recommended closing the claim. (Id.) By letters dated August 13, 2012, and September 26, 2012, Defendant denied Plaintiffs' supplemental claim. (Doc. 24, Ex. N, Aug. 13, 2012 Denial Letter; Ex. O, Sept. 26, 2012 Denial Letter.)

Plaintiffs' subsequent appeal to FEMA in October 2012 was denied, and Plaintiffs filed the present action. (Doc. 24 at ¶ 14; Doc. 30 at ¶ 13.) During the discovery phase, Mr. Robins provided answers to interrogatories and deposition testimony, which is the root of Defendant's

argument that Plaintiffs intentionally concealed material facts, thereby triggering Article VII(B)(1) of the SFIP. (Doc. 24, Ex. Q, Interrog.; Ex. G, Robins Dep.; Ex. B.) Additionally, on the last day of discovery, Plaintiffs disclosed an expert witness, Jay William Seeherman, and his expert report, which is the basis for Defendant's motion to strike.

### III. MOTION TO STRIKE

As a preliminary matter, Defendant argues that this Court should strike Plaintiffs' expert, Jay William Seeherman, and/or his testimony, because Plaintiffs did not disclose Seeherman's identity and expert report until the last day of discovery. Alternatively, Defendant argues that Seeherman's expert report should be excluded because his report did not comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

The discovery deadline was initially set for May 31, 2013. (Doc. 14, Case Action Memo.) The Court then granted a joint motion to extend the discovery deadline (Doc. 17), and the modified discovery deadline was set for July 31, 2013 (Doc. 18). At 3:45 p.m. on the last day of the discovery period, Plaintiffs disclosed Seeherman as a valuation expert in this case. (Doc. 25, Def.'s Motion to Strike, Ex. C, July 31, 2013 E-mail.) Plaintiffs also attached Seeherman's expert report, dated July 31, 2013 (Id., Ex. D, Expert Report) and curriculm vitae (Id., Ex. E, CV). On August 1, 2013, the day after discovery closed, Plaintiffs' counsel left Defendant's counsel a voicemail, stating he would not object to a joint motion to extend discovery to allow for Defendant to depose Seeherman. (Id. at 6; Doc. 32, Pl.'s Ans. to Motion to Strike, at 6.) On August 6, 2013, counsel for Defendant contacted Plaintiffs' counsel via e-mail, stating that Plaintiffs' last minute expert witness disclosure caused the Defendant severe prejudice because Defendant was unable to review and address Seeherman's opinions during the discovery period.

6

(Doc. 25, Ex. F, Aug. 6, 2013 E-mail.) Defendant's counsel pointed out that there was no guarantee that the Court would grant another extension to conduct discovery, since the Court already granted a sixty day extension. (Id.)

Considering Defendant's argument of untimeliness, the Court looks to Rules 26(a)(2) and 26(a)(2)(C) of the Federal Rules of Civil Procedure, which requires a party to disclose the identity of an expert witness and provide written reports at the time the court order dictates, if the court does so. As a consequence, if a party fails to disclose an expert witness or an expert report under Rule 26(a), Rule 37(c)(1) states that the non-producing party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." However, "[t]he imposition of sanctions for abuse of discovery . . . is a matter within the discretion of the trial court." Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995) (quoting Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir. 1994)). Additionally, the non-producing party has the burden to prove substantial justification or a harmless effect. Klatch-Maynard v. Sugarloaf Twp., No. 06-0845, 2011 WL 2006424, at *2 (M.D.Pa. May 23, 2011) (quoting Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D.Pa. 2002)). Plaintiffs have failed to prove either of these conditions.

First, the Court notes that the disclosure of the expert witness and his expert report at 3:45 p.m. on July 31, 2013, the last day of the discovery period, was untimely. Although the disclosure was made before the discovery deadline, Plaintiffs knew that Defendant would not be able to digest Seeherman's opinions, depose him, and get a rebuttal witness, by the end of the discovery period - that very same day. See Semi-Tech Litigation LLC v. Bankers Trust Co., 219 F.R.D. 324 (S.D.N.Y. Jan. 6, 2004) (finding that an expert report served on the last day of the

discovery period was untimely); see also Auscape International v. National Geographic Society, No. 02-CV-6441 LAK, 2003 WL 2004463 (S.D.N.Y. April 28, 2003) (finding that an expert report served on the last day of the discovery period was untimely). It was the Plaintiffs' duty to disclose the identity of their expert witness and produce the expert report sufficiently early to allow both parties to comply with the discovery deadline set by the Court. Plaintiffs failed to do so, and therefore, failed to comply with Rule 26(a)(2)(C) and the Court's order.

Rule 37(c)(1) allows the Court to strike Plaintiffs' expert's opinions for being untimely if Plaintiffs do not meet their burden of showing either substantial justification for the late disclosure or a harmless effect. Plaintiffs provide no real justification for the untimeliness of their disclosure, other than that it was indeed timely since disclosure was done before the discovery deadline. As the Court already noted, both parties must have their discovery completed by the discovery deadline. Plaintiffs' counsel seems to understand this as he attempted to resolve this issue by suggesting to Defendant's counsel that they file a joint motion for extension of discovery to allow Defendant to depose Seeherman. Additionally, Plaintiffs do not attempt to show the Court that the effect of their untimely disclosure is harmless since they assert that it was timely. Therefore, Plaintiffs have not met their burden of showing a substantial justification or that the effect was harmless.

Since Plaintiffs did not meet their burden, the Court has discretion whether to exclude Plaintiffs' expert testimony pursuant to Rule 37(c)(1). As the Third Circuit noted, "the exclusion of evidence for violation of a discovery order is an 'extreme sanction.'" In re TMI Litigation, 193 F.3d 613, 721 (3d Cir. 1999) (citing Dudley v. South Jersey Metal, Inc., 555 F.2d 96, 99 (3d Cir. 1917)). In determining whether to exclude the expert testimony, the Court must consider the

Pennypack factors: (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;" (2) "the ability of that party to cure the prejudice;" (3) "the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court;" (4) "bad faith or willfulness in failing to comply with the district court's order;" and (5) "the importance of the excluded evidence." ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 298 (3d Cir. 2012) (quoting Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904-05 (3d Cir. 1997), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985)). Additionally, "[t]he importance of the evidence is often the most significant factor." Id. (citing Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 302 (3d Cir. 1991); Pennypack, 559 F.2d at 904 ("observing 'how important [the excluded] testimony might have been and how critical [wa]s its absence'")).

Considering the above factors, the Court finds that although Defendant would be clearly prejudiced by Plaintiffs' late expert witness disclosure, there is time to cure the prejudice, particularly since the case has not been set for trial and there is no evidence of bad faith on the Plaintiffs' part, as evidenced by Plaintiffs' counsel's suggestion to file a joint motion to extend the discovery deadline.

The Court next considers Defendant's second argument to strike the expert opinions and testimony of Seeherman. Defendant argues that Seeherman's expert report fails to meet the requirements set out in Rule 26(a)(2)(B). Rule 26(a)(2)(B) requires the written report to contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;

9

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B)(i-vi).

Defendant argues that Seeherman's expert report was deficient in several respects: (1) specific exhibits used by Seeherman to summarize or support his opinions were not attached or specifically indicated; (2) it was not detailed and complete; and (3) a list of all publications Seeherman authored in the previous ten years was not attached.

Seeherman indicated in his expert report that he examined the "photographs, Contents/Personal Property Inventory prepared by Nolde Robins, Jr., Contents Inventory prepared by Simsol Insurance Services, Inc. and the documents provided to [Plaintiffs] by [Defendant]." (Doc. 25, Def.'s Motion to Strike, Ex. D, Expert Report.) He also goes on to give his opinion as to depreciation "[a]fter reviewing the Contents Inventories." (Id.) The Court finds that the report is sufficiently detailed and complete, Seeherman adequately indicated the exhibits used to formulate his opinions, but did not attach them as exhibits as required by Rule 26(a)(2)(B)(iii).

Lastly, the Court finds that Plaintiffs have not met their burden to show the omissions of Seeherman's publications and compensation were harmless, but in using its discretion through consideration of the Pennypack factors, the Court will not preclude the

expert report since the Court is opening discovery for a limited purpose, which will allow Plaintiffs to cure the Rule 26(a)(2)(B) defects.

Accordingly, Defendant's motion to strike is denied, and the Court will extend discovery for the limited purpose of allowing Defendant to depose Seeherman and retain a rebuttal expert if they choose to do so. Additionally, Plaintiffs must promptly comply with Rule 26.

## IV. SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In doing so, the court must accept the non-movant's allegations as true and resolve any conflicts in his favor. Id. (quoting Gans v. Mundy, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985)); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving

party's case." Id. at 325. After the moving party has met its initial burden, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). It then follows that summary judgment is appropriate if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. DISCUSSION**

The National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq*, established the NFIP, which is underwritten by the United States Treasury "in order to provide flood insurance below actuarial rates." 42 U.S.C. § 4107 (2012); Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 807 (3d Cir. 2005). FEMA administers the NFIP and "provides for marketing and claims adjustment of the SFIP by . . . [WYO] Companies, who operate as fiscal agents of the United States. Suopys, 404 F.3d at 807 (citing 44 C.F.R. §§ 61.13(f), 62.23 (2009); 42 U.S.C. § 4071(a)(1) (2012)). WYO Companies are not authorized to alter or waive any provisions of the SFIP without the express, written consent of the Federal Insurance Administrator. 44 C.F.R. Pt. 61, App. (A)(1), Art. VII(D); 44 C.F.R. § 61.13(d) (2009). Additionally, SFIP provisions must be strictly enforced since payment on a claim is made out of the United States Treasury. See Suopys, 404 F.3d at 809-11.

Federal common law governs the interpretation of the SFIP, which is "construed in accordance with its plain, unambiguous meaning . . ." to provide uniformity throughout the country. Id. at 809. Defendant's motion for summary judgment is based on two arguments: (1) Plaintiffs failed to provide supporting documentation to establish their

ownership and value of items purportedly damaged in the September 8, 2011 flood pursuant to Article VII(J)(3) of the SFIP; and (2) Plaintiffs intentionally concealed material facts about their acquisition of certain contents, thereby voiding the SFIP in accordance with Article VII(B)(1).

The Court first considers Defendant's argument that Plaintiffs failed to provide adequate documentation. Article VII(J)(3) of the SFIP, Requirements in Case of Loss, requires the insured to "[p]repare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss [and/or] attach all bills, receipts, and related documents." Defendant argues that the Plaintiffs did not strictly adhere to the requirement because they did not provide "related documents" that show ownership and the value of the items listed on the submitted Worksheet. Defendant asserts that Plaintiffs could have provided "copies of bank statements, cancelled checks, credit card statements, or photographs taken of contents at the property *before the flood*." (Doc. 35, Def.'s Reply Br., at 5.) Plaintiffs assert that the file cabinet, which contained all of Plaintiffs' receipts, was washed away by the flooding; therefore, they were unable to provide any receipts for the damaged or destroyed items because they did not exist. Plaintiffs did provide hundreds of photographs of the property and debris both during the initial claim and again for the supplemental claim.

The Court finds there is a dispute of material fact as to whether Plaintiffs submitted sufficient documentation by way of the photographs submitted to Defendant. As the Eastern District of Louisiana noted, "[t]he requirement that a claimant 'attach all bills, receipts, and related documents' can only extend to those documents that exist."

13

Provenza v. State Farm Fire & Cas. Ins. Co., No. 06-CV-7319, 2007 WL 1655567 at *3 (E.D. La. June 6, 2007). In Provenza, the court found that if the claimant does not provide documentation, because none exists, the claimant has technically satisfied the SFIP documentation requirement, although it will give the insurer pause. Id. The court further stated that, "[w]hen the insurer denies the claim for failure to adequately prove up prior repairs, the claimant should have the chance to present his evidence, such as it is, to a finder of fact that will determine whether the insurer correctly denied the claim." Id. Additionally, in Curole v. Louisiana Citizens Property Ins. Corp., No. 06-CV-8539, 2007 WL 625933 (E.D. La. Feb. 23, 2007), the insureds' loss was only documented by photographs taken by them and FEMA's adjuster, since there were no "'receipts, invoices, and/or cancelled checks to provide [as] additional documentation' because their home was totaled." Curole at *2. The Curole court found that there was a genuine issue of material fact as to whether Plaintiffs complied with the proof of loss requirement since they only submitted photographs. Id. at *4. Similarly, in the present case, the Court finds there is a genuine issue of material fact as to whether Plaintiffs complied with the documentation requirements because the only documentation submitted with the claim were photographs taken by the adjuster and the Plaintiffs since related documents were lost in the flood.

Further proof that a genuine issue of material fact exists is shown by the fact Defendant found there was sufficient documentation to support a claim for three office chairs when the only documentation submitted were the photographs. Handwritten modifications were made to the Contents Inventory crossing out thirty-six of the thirty-

14

seven line items. (Doc. 30, Pl.'s SMF, Ex. C.) After modification, the only line item not crossed out was the third line item, four office desk chairs, eight years old, valued at eighty dollars, but the quantity was changed to three. Marie Nelson, Senior Claims Examiner for Defendant, stated in a letter to Plaintiffs dated March 8, 2012, that "[t]he photographic documentation that we have received shows three flood damaged chairs. We have considered this allowance, however; (*sic*) your contents claim is below your policy deductible." (Doc. 24, Def.'s SMF, Ex. L.) Although the black and white photographs submitted to the Court as exhibits are not completely clear, the Court clearly sees boxes of glass in the debris pile. It is not clear to the Court how Defendants found photographs of the debris pile adequate as to the office chairs, but not as to other items listed in the claim. Therefore, the Court finds there is a dispute of material fact.

The Court next considers Defendant's second argument for summary judgment, which is that Plaintiffs triggered Article VII(B)(1), when they intentionally concealed material facts and misrepresented their acquisition of the furniture glass. Article VII(B)(1), Concealment of Fraud and Policy Voidance, states,

> With respect to all insureds under this policy, this policy . . . [i]s void [and] [h]as no legal force or effect . . . if, before or after a loss, you or any other insured or your agent have at any time: (1) [i]ntentionally concealed or misrepresented any material fact or circumstance; (2) [e]ngaged in fraudulent conduct; or (3) [m]ade false statements . . . relating to this policy or any other NFIP insurance.

44 C.F.R. Pt. 61, App. A(1) (2009).

Defendant asserts that when it requested documentation to substantiate ownership, Plaintiffs misrepresented that receipts for the items listed on the Worksheet existed, but were not available because they were washed away in the flood, when in fact there were

15

no receipts for the furniture glass since they were not acquired through a purchase. Defendant further asserts that Mr. Robins intentionally concealed the fact that he obtained the furniture glass for free because he feared Defendant would use the fact that he obtained the glass for free, to lower the monies recoverable under the SFIP.

Plaintiffs deny intentionally concealing or misrepresenting any material fact. Plaintiffs assert they did purchase the glass and mirrors, and that the purchase price was the cost of removal of the items. The cost of removal included the cost of renting a tractor trailer and the labor. Therefore, Plaintiffs assert that there was no misrepresentation since Mr. Robins believed the purchase price of the glass and mirrors was the cost of removal.

In reviewing the parties' briefs, deposition testimonies, and interrogatories submitted, the Court finds there is a genuine issue of material fact as to whether Mr. Robins intentionally concealed or misrepresented a material fact. In his deposition, Jackson testified that he believes Mr. Robins told him he purchased the glass and mirrors from someone going out of business, "and he would go and buy this, and he would sell it for a profit." (Doc. 24, Def.'s MSJ, Ex. D, Jackson Dep., 42:13-20.) Plaintiffs assert that Mr. Robins described his business generally to Jackson, and also that he considered himself having purchased the glass because he expended costs on the removal of the items. Plaintiff also testified to this fact in his deposition. (Doc. 24, Ex. G, Nolde Robins Dep., 34:5-12.)

Additionally, there is further evidence of the dispute of material fact due to part of Mr. Robins' deposition testimony:

> Q: But wouldn't it be accurate to say that you didn't give full details about the transaction because you were afraid that the insurance company would take that [into consideration] and not give you what you would consider[] to be full value; isn't that correct?
>
> A: Yes.

(Id., 61:25-62:5.)

It is disputed whether there was a misrepresentation or an intentional concealment in the first place, and the Court finds this is further evident by the testimony of the relevant persons.

Defendant also points to Plaintiffs' response to question twelve of the interrogatories to show Mr. Robins intentionally concealed and materially misrepresented material facts. (Doc. 24, Ex. Q, Interrog.) The Court finds no such intentional concealment or misrepresentation.

> Q: Please identify each person from whom your Liquidation Business has purchased **or otherwise obtained** the stock or inventory . . ., stating the general category of stock or inventory purchased **or obtained** . . . . (emphasis added.)
>
> A: Furniture glass and mirrors **were obtained** from Comfort Design of Wilkes Barre, Pennsylvania, owned by Griff Keefer. These items were not obtained as a result of any agreement but as a result of an ongoing relationship between Plaintiff and Comfort Design over a period of years. The Plaintiffs purchased items, also from various auctions and individuals . . . . (emphasis added.)

(Id.)

There was clearly no misrepresentation or intentional concealment in Plaintiffs' answer to question twelve of the interrogatories because the question asked about items "purchased or otherwise obtained," and Plaintiffs answered by stating the furniture glass was "obtained."

Therefore, since there are genuine issues of material fact as to whether Plaintiffs intentionally concealed or materially misrepresented how they acquired the glass and whether

17

Plaintiffs provided sufficient documentation, Defendant's Motion for Summary Judgment will be denied.

## V. CONCLUSION

For the reasons set forth above, we will deny Defendant's Motion for Summary Judgment (Doc. 24) and Motion to Strike the Expert Opinions and/or Testimony of Jay Williams Seeherman (Doc. 25). An appropriate order is attached.